M. SMITH,
concurring in part and dissenting in part:
While I agree with my colleagues that the district court’s grant of summary judgment in favor of Clarendon must be reversed, I respectfully disagree that, drawing all reasonable inferences in favor of Clarendon, U-Haul is entitled to judgment as a matter of law. Because I believe Clarendon’s interpretation of this poorly-drafted and ambiguous policy is about as reasonable as U-Haul’s, I would remand to the district court for further proceedings. See State v. Mabery Ranch, Co., 216 Ariz. 233, 165 P.3d 211, 217 (2007).
U-Haul’s interpretation, for the reasons explained by the majority, may ultimately be the best reading of the policy’s terms. However, Arizona law permits a court to examine extrinsic evidence in order to determine if a policy is susceptible of multiple reasonable interpretations without an initial finding of ambiguity. Taylor v. State Farm Mut. Auto. Ins. Co., 175 Ariz. 148, 854 P.2d 1134, 1140-41 (1993). Although I might agree that the policy viewed without the aid of extrinsic evidence is unambiguous, in light of Arizona law, I look at the extrinsic evidence and conclude that when considering that evi *738 dence in the light most favorable to the nonmoving party, Clarendon’s interpretation becomes a plausible reading of the policy language. Moreover, Clarendon’s interpretation is reasonable because it is more in keeping with traditional underwriting practices. For example, under U-Haul’s interpretation of the policy, Clarendon pays nothing in the event of a defense verdict, or a verdict against U-Haul in the amount of $4,999,999.99 or less, regardless of the amount of litigation costs — even if such costs amount to millions of dollars. But if U-Haul settles for or suffers a verdict of over $5 million, Clarendon pays up to $5 million in damages and all of the defense costs no matter how little or large the amount. On the other hand, Clarendon’s interpretation of Section l(B)(l-2) means U-Haul is obliged to either defend the suit, or instead tender the limits of its underlying insurance and turn the defense over to Clarendon.
Further, contrary to what the majority says, Clarendon did offer evidence (in the form of expert and deposition testimony) that the defined term “Claims Expense” in Section 1(A)(1) relates to the cost of its own defense of suits and that therefore the policy does not cover U-Haul’s defense expenses. Clarendon may ultimately deserve to lose on this argument, either because “Claims Expense” does relate to U-Haul’s defense costs, or because generally insurance policies should be construed against the insurer and in favor of coverage. But I would not decide that Clarendon loses as a matter of law on this record. First, there is both direct and circumstantial evidence that the parties understood that Clarendon was not offering to provide any coverage for U-Haul’s defense costs. Second, there is no evidence suggesting that U-Haul’s current interpretation of the policy was accepted by anyone until midway through the litigation (notably, U-Haul initially argued for a different interpretation altogether, and U-Haul’s counsel adopted yet a third interpretation of the policy at oral argument). Third, it is a disputed factual issue whether U-Haul was a sophisticated party in this transaction who affirmatively participated in negotiating the key terms of coverage, thus distinguishing this case from the authorities U-Haul cites. Under the circumstances, I think the proper result would be to vacate the district court’s order, and remand the case for further proceedings— and perhaps a well-justified settlement.
When interpreting a contract for insurance, our primary responsibility is to effectuate the intent of the parties. Taylor, 854 P.2d at 1138. The majority’s reading of the policy, rejecting Clarendon’s extrinsic evidence, has likely resulted in an enforcement of this policy in a way neither party intended at the time of contracting. I therefore respectfully dissent.